UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CSX TRANSPORTATION, INC.,

        Plaintiff,

                                              Case No. 5:06-CV-138

v.

                                              Hon. Robert J. Jonker

MESEROLE STREET RECYCLING,
INC., et al.,

        Defendants.
_____/

MARQUETTE RAIL, LLC,

        Plaintiff,

                                              Case No.  1:06-CV-804

v.

VORTEX, INC., et al.,

        Defendants.
_____/

MESEROLE STREET RECYCLING, INC.,

        Plaintiff,

v.                                                Case No.  1:07-CV-985

CSX TRANSPORTATION, INC., et al.,

        Defendants.
_____/

**OPINION AND ORDER**

**BACKGROUND**

        Meserole Street Recycling, Inc. (Meserole), and Filco Carting Corp. (Filco) filed an Amended Complaint ("complaint" or "amended complaint") on March 12, 2008.  (docket # 85.)

The complaint is divided into two parts: "the first set of claims," which contains six counts (one Carmack Amendment claim, three fraud claims, a contract claim, and a claim for a declaratory judgment), and the "second set of claims (civil RICO)," which contains one count (RICO).  In essence, the claims seek damages from Defendants NY & Atlantic Railway (NY & Atlantic), CSX Transportation, Inc. (CSX), Marquette Rail, LLC (Marquette), Vortex, Inc. (Vortex), and Robert Geber (Geber) as compensation for economic harm Meserole suffered when Defendants allegedly (1) fraudulently induced Meserole to ship cargo and then (2) intentionally failed to deliver the cargo as promised and wrongfully charged Meserole demurrage and other costs.  CSX and Marquette have their own claims in this consolidated action against Meserole for demurrage and other alleged damages associated with the shipped material.

Meserole and Filco are waste recycling companies that, among other things, deal in source separated paper generated in the New York area.  During the time covered by the dispute in these cases, Meserole and Filco contracted with Vortex and Geber to arrange for transport, handling, and ultimate disposal of a quantity of source separated paper.  The transportation channel used by the parties was railroad, including without limitation CSX and a short line affiliate in Michigan, Marquette.  The ultimate intended recipient of the material was C&V Logistics (C&V), a Michigan company in which Geber had an interest.  C&V and Geber intended to convert the material into fuel-pellet product.  The business plan depended on at least two things: (1) an interpretation of Michigan law treating the source separated paper as something other than solid waste; and (2) a customer market for the fuel pellets.  The ultimate business plan did not work out as intended, stranding approximately 164 rail cars of source separated paper originally shipped from Meserole and Filco.

The shipping arrangement began in approximately November, 2005. The last shipment left New York in approximately April, 2006, just before CSX refused to accept any additional material for shipment. The parties' dispute in these consolidated cases centers on what, if anything, is owed for transportation, demurrage, and other related tariff charges; and who owes what to whom for other damages allegedly incurred in the process of handling and disposing of the shipped materials.

The RICO portion of the amended complaint attempts to plead a claim under 18 U.S.C. § 1962(c) based on these facts. The RICO claim does not introduce any fundamentally new facts, but it does reshape and recharacterize the basic fact pattern in an effort to satisfy the statutory elements of a civil RICO claim. In its RICO claim, Meserole alleges that CSX, Marquette, and Geber were associated in a partnership entity, referred to as the "CSX Short-Line Partnership," (Compl. ¶ 93), and that the partnership was a "criminal manifestation of the 'Short-Line Partners' that CSX has advertised to the general public on its internet web-site." (*Id.* ¶ 99.) Meserole further alleges that beginning in approximately November, 2005, the members of the CSX Short-Line Partnership acted in concert and in an agency relationship "to manipulate rail shipments by third party shippers and others to enhance, enlarge, and increase the revenues to the [CSX Short-Line Partnership] over and above any lawful charges for actual rail shipment costs." (*Id.* ¶¶ 100, 118.) The basic method of manipulation is alleged to be booking cargo for shipment but then misdelivering or completely failing to deliver approximately 164 railcars while continuing to charge and assess demurrage charges against the "hostage" railcars, some of which may not yet be accounted for. (*Id.* ¶¶ 98, 101, 108, 118). The question is whether this packaging of the factual allegations is sufficient to state a valid civil RICO claim.

**THE PENDING MOTION**

This matter came up for hearing on three motions to dismiss under Rule 12 of the Federal Rules of Civil Procedure: (1) CSX's motion to dismiss (docket # 94), (2) Marquette's motion to dismiss (docket # 98), and (3) NY & Atlantic's motion to dismiss (docket # 120). The Court also considered Meserole's motion for sanctions (docket # 109). The Court denied in part the motions brought by CSX and Marquette, granted the motion brought by NY & Atlantic, and denied the motion for sanctions. (docket # 149.) The Court took under advisement the motions brought by CSX and Marquette on the RICO claim in Count VII of the amended complaint. This Opinion and Order addresses that issue.

**LEGAL FRAMEWORK**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement" of a claim designed to "give the defendant fair notice" of the claim against her. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). But the Supreme Court has recently clarified that to meet that standard and survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). *Twombly* did not change the notice-pleading standard; "detailed factual allegations" are still not necessary, but the Supreme Court did hold that a plaintiff's complaint must contain "more than labels and conclusions." *Id*. at 1964. In so holding the Court took a step away from the long-standing "no set of facts" standard established by *Conley*. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). Indeed, the Court found that "*Conley*'s 'no set of facts' language had been

questioned, criticized, and explained away" such that "this famous observation had earned its retirement." *Twombly*, 127 S. Ct. at 1969. Applying a newly crafted "plausibility" test, the Court held that in the antitrust context a complaint alleging a Sherman Act Section 1 claim must include "enough factual matter (taken as true) to suggest that an agreement was made." *Id.* at 1965. The agreement need not be probable, but the complaint must contain sufficient factual allegations "to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* This is an especially delicate and important inquiry in cases under the federal antitrust law, where inferences of intention from potentially neutral conduct are necessary to sustain the federal claim, and where unusually invasive and costly pretrial discovery is a near certainty for any such claim surviving a motion to dismiss. In essence, under *Twombly* a complaint asserting such a claim must contain enough facts to support a "plausible," and not merely a "conceivable," claim for relief. *Id.* at 1974. Similar considerations apply to analysis of RICO claims.

## ANALYSIS

CSX and Marquette argue that Meserole's amended complaint should be dismissed under Rule 12 for failure to state a claim under the 1970 Racketeer Influenced and Corrupt Organizations Act (RICO). 18 U.S.C. §§ 1961–68. RICO, a statute "constructed on the model of a treasure hunt," authorizes a private action for treble damages, plus an award of attorneys' fees, to persons injured in their business or property when an entity engages in a "pattern of racketeering activity." 18 U.S.C. § 1962; *Sutliff, Inc., v. Donovan Cos.*, 727 F.2d 648, 652 (7th Cir. 1984). Congress enacted RICO in an attempt to confront and curtail organized crime, but RICO quickly "created a runaway treble damage bonanza for the already excessively litigious." *Schacht v. Brown*, 711 F.2d 1343, 1361 (7th Cir. 1983). Since RICO's inception courts have labored to effectuate

RICO's purposes by giving meaning to the broad language adopted by Congress while simultaneously reining in the runaway bonanza. *See, e.g.*, *Fleet Credit Corp v. Sion*, 893 F.2d 441, 447 n.1 (1st Cir. 1990) ("The problem facing the courts, then, is how to properly limit private civil RICO actions so as to conform to the Congressional intent of prohibiting organized crime from corrupting legitimate businesses, where the statutory language could easily be read to permit racketeering actions seeking treble damages against respectable businessmen over ordinary contract fraud disputes." (quoting *Fleet Credit Corp. v. Sion*, 699 F. Supp. 368, 376 (D.R.I. 1988))). The challenge has been to distinguish situations involving persons actually engaged in "longterm criminal activity" from those involving nothing more than routine business disputes that do not include established patterns of racketeering activity. *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989). This is precisely the kind of line drawing to which the Supreme Court's *Twombly* analysis naturally and properly applies.

To state a RICO claim a plaintiff must plead sufficient facts to establish the existence of, among three other elements, a pattern of racketeering activity. *Vemco v. Cmardella*, 23 F.3d 129, 133 (6th Cir. 1994). A pattern requires at least two predicate acts within ten years of each other. *Id.* at 133–34. And there must also be a nexus between the acts: there must be both relatedness and continuity. *Id.* Relatedness is established by alleging the same or similar purposes, results, participants, victims, or methods of commission. *Id.* Continuity is established by alleging (1) a closed period of repeated conduct extending over a substantial period of time, (2) past conduct that projects into the future with a threat of repetition, or (3) predicates that are a regular way of conducting or participating in either an ongoing legitimate business or an ongoing and legitimate RICO enterprise. *Vild v. Visconsi*, 956 F.2d 560, 569 (6th Cir. 1992). The key issue on Defendants'

motions is whether the amended complaint includes sufficient factual allegations (taken as true) to support an inference of a continuous pattern of racketeering activity, as opposed to a single commercial dispute.

In this case, the Court finds that Plaintiff has failed to "nudge [its RICO continuity] claim[] across the line from conceivable to plausible." As did *Twombly*, this case involves a federal statute under which there is significant risk, absent careful review at the motion-to-dismiss stage of proceedings, of plaintiffs transforming garden-variety commercial disputes into something significantly more burdensome to the opposing party simply by invoking certain labels in a complaint. Despite Plaintiff's general allegations that there was a continuous and ongoing pattern of racketeering activity in this case, and despite the invocation of other RICO language, the RICO claims must be dismissed because the complaint does not go beyond those labels and language to include sufficient factual allegations that raise a right to relief above a speculative level.

This case arises out of a routine commercial dispute involving shippers (or sellers) of a specific and defined amount of paper materials (whether those materials are classified as solid waste or source-separated materials), railroad transporters of those materials, and buyers or potential recipients of the materials. It involves a specific number of railcars, a limited number of victims, and a closed, limited period of time. Moreover, although it appears that there once was a potential market for the materials, as a practical commercial matter that market no longer exists. Basic economics and market dynamics have thus closed the window on any potential of a continuing, ongoing, open-ended scheme intended to fraudulently induce the shipment of paper materials from generators or collectors such as Meserole. The alleged conduct, which was targeted to affect at most four victims over the relatively short and closed period of between six and fourteen months, is

insufficient to establish a RICO pattern. *C.f. Vild v. Visonsi*, 956 F.2d 560, 569–70 (6th Cir. 1992) (affirming the district court's holding that plaintiff did not prove continuity because the activities lasted only six or seven months); *Griffin v. NBD Bank*, 43 F. Supp. 2d 780, 788–89 (W.D. Mich. 1999) (holding that there was no indication of a continuing scheme because the "undisputed facts show[ed] that the alleged scheme was of a relatively short duration[—between three and eleven months]"); *Gotham Print, Inc. v. American Speedy Printing Ctrs.*, 863 F. Supp. 447, 460 (E.D. Mich. 1994) (holding that allegations of "isolated acts" of fraud occurring over an eighteen-month period did not meet the continuity element). The allegations in the complaint simply do not raise a reasonable expectation that discovery will reveal evidence of the "'long-term criminal conduct' that RICO is intended to redress." *Disandro-Smith & Assocs., P.C. v. Edron Copier Serv., Inc.*, 722 F. Supp. 912, 916 (D.R.I. 1989) (holding that "three sales of used copy machines as new within approximately two years" did not meet the continuity element).

The allegations in the complaint do not transmute this case into a *Twombly*-plausible RICO claim. They simply evidence Plaintiff's endeavor to repackage closed, defined, and limited commercial wrongdoing into boxes labeled with RICO statutory language. The allegations in the complaint fail to distinguish this case in any meaningful way from most any other commercial dispute involving allegations of misrepresentation and fraud. Plaintiff's claim fails because no matter how the conduct is labeled this case involves only a readily defined, time-limited, quantity-limited commercial dispute between known parties who used standard commercial means—contracts and tarriffs—to accomplish normal, legitimate business goals. The allegations of wrongdoing arise out of things that allegedly went wrong along the way. Such allegations fall short of what is

necessary to establish a properly pleaded continuity element of a RICO claim that survives a Rule 12(b)(6) motion under the *Twombly* test.

**ACCORDINGLY, IT IS ORDERED** that the motions to dismiss brought by CSX and Marquette (docket # 94, 98) are **GRANTED** with respect to Count VII of the Amended Complaint.  That Count is **DISMISSED**.


Dated:   August 12, 2008                               /s/ Robert J. Jonker
                                                       ROBERT J. JONKER
                                                       UNITED STATES DISTRICT JUDGE